## Myrtle Rost, Appellee, v. Kee & Chapell Dairy Company, Appellant.

### Gen. No. 24,631.

1. Food—*when declaration for permitting bottle of milk to contain broken glass is not one in case for breach of warranty.* A declaration in an action against a milk company alleging negligence in permitting a bottle of milk to contain broken pieces of glass, and in delivering such bottle to plaintiff without warning her of the danger in consuming it, is not a declaration in case for a breach of warranty, there being no allegations of the warranty or its breach, and mere allegations of a contractual relation between the parties do not of themselves make out a case for breach of warranty.

2. Food—*necessity of proving negligence alleged in action for injuries from drinking milk containing glass.* Where an action for injuries suffered in drinking milk containing glass was tried on the theory of negligence, the plaintiff was obliged to prove the negligence alleged.

3. Food—*what instruction proper in action for negligence in selling milk containing glass.* In an action for negligence in selling milk containing glass, the giving of an instruction that the defendant was not an insurer against fragments of glass being in bottles sold and delivered, but was required to exercise due care in handling, inspection and delivery of the milk and in filling bottles, was proper.

4. Negligence, § 185*—*evidence to prove and degree of proof required.* Negligence need not be proved by absolute, ocular proof,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and it need not be established beyond a reasonable doubt, and circumstantial evidence, by which the mind is compelled to make certain deductions, may be sufficient.

5. NEGLIGENCE, § 142*—*what doctrine of res ipsa loquitur connotes.* The doctrine of *res ipsa loquitur,* acutely analyzed, merely connotes a principle of evidence and generally means the inferences drawn from knowledge obtained through the senses, chiefly that of sight.

6. FOOD—*when evidence establishes negligence in selling bottle of milk containing broken glass.* In an action for negligence in selling a bottle of milk containing broken glass, where the evidence shows the manner in which defendant conducted its business, that the bottle was under the control of defendant until delivery to the plaintiff, and that such plaintiff was injured by drinking the milk contained therein, such evidence sufficiently establishes negligence of the defendant somewhere between the cleaning of the bottle and its final delivery, it not being important just where the negligence occurred.

7. FOOD—*what evidence irrelevant in action for negligence in selling bottle of milk containing broken glass.* In an action for negligence in selling a bottle of milk containing broken glass, evidence as to the condition of the defendant's machinery and its inspection was irrelevant, as the use of machinery while tending to increase output, and the saving of hand labor, does not reduce the obligations of due care nor condone negligence.

8. FOOD—*what evidence too remote in action for negligence in selling bottle of milk containing broken glass.* In an action for negligence in selling a bottle of milk containing broken glass, testimony of a driver as to regulations requiring delivery of milk after 8:00 a. m. was too remote and was properly rejected, as such witness had no knowledge of the delivery of the milk causing the injury.

9. FOOD—*when refusal of instruction in action for negligence in selling bottle of milk containing broken glass not erroneous.* In an action for negligence in selling a bottle of milk containing broken glass, the refusal of an instruction that the defendant did not warrant the milk delivered was not error, being inapplicable, and in any event the refusal of the instruction was not erroneous as it was superfluous in view of another instruction given.

10. FOOD—*when instruction in action for negligence in selling bottle of milk containing broken glass properly refused.* In an action for negligence in selling a bottle of milk containing broken glass, an instruction that the defendant was not liable unless it

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

had knowledge of the glass was properly refused, as it undertook to relieve the defendant of its full duty.

11. FOOD—*when instruction in action for negligence in selling bottle of milk containing broken glass properly refused.* In an action for negligence in selling and delivering a bottle of milk containing broken glass, an instruction as to control and management was properly refused, as such control and management were not involved, and by the voluntary delivery of the instrument causing the injury so that its contents might be consumed, the relationship between the parties, out of which the liability grew, was established.

THOMSON, P. J., dissenting.

Appeal from the Circuit Court of Cook county; the Hon. ROBERT E. CROWE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1918. Affirmed. Opinion filed February 11, 1920. *Certiorari* denied by Supreme Court (making opinion final).

CASTLE, WILLIAMS, LONG & CASTLE, for appellant.

CUTHBERT D. POTTS and JAMES L. BYNUM, for appellee; JAMES L. BYNUM, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

By this appeal, the defendant, Kee & Chapell Dairy Company, seeks to reverse a judgment for $3,500 which the plaintiff, Myrtle Rost, recovered, based upon a verdict of a jury finding the issues in her favor.

The declaration consists of one count. It is alleged therein that the defendant was engaged in the dairy or milk business and, in connection therewith, used a large number of glass bottles, and certain machinery and appliances for cleansing the bottles; that after the bottles were cleansed, they were filled with milk and cream for distribution among the defendant's customers, among whom was the plaintiff; that the defendant, for a certain consideration paid by the plaintiff, delivered milk and cream in said glass bottles for her use and consumption; "that it then and there became and was the duty of the said defendant to use due

and proper care and caution in the washing, cleansing and in the preparation of the said glass bottles for the reception and distribution of said milk, cream and other dairy products and in such a manner as not to break, or cause to be broken, or suffer, or permit, or allow, certain parts of the glass bottles or any small particles of glass or any other sharp and broken material to come, be and remain in said bottle or bottles and to place the milk, cream and other dairy products in said glass bottles while the said glass bottles contained broken fragments and pieces of glass or any other dangerous materials.

"Yet the defendant, well knowing * * *, did then and there carelessly, negligently and improperly break or caused or permitted to be broken, certain parts or particles of said glass bottles. And did then and there carelessly, negligently and wrongfully place or cause to be placed, suffered, permitted and allowed various small pieces of glass to be and remain in said bottles and carelessly, negligently and improperly fail to inspect the said glass bottles and the condition of the same so as to ascertain the dangers connected with the broken glass in said bottles. And while the said glass bottles containing the said small and broken pieces of glass and broken fragments of other materials as aforesaid, carelessly, negligently and improperly filled the said bottles with milk * * * and did then and there carelessly, negligently and improperly deliver * * * said bottles, so filled, to the plaintiff for her consumption * * *. And did then and there carelessly, negligently, wrongfully and recklessly fail to warn and notify and point out to the plaintiff the danger of using said milk, * * * so placed, contained, taken and consumed from said bottles. And by means and in consequence of the said several acts of negligence as aforesaid, * * * while the plaintiff, in the exercise of ordinary care for her own safety, was consuming said milk, * * * (she) did then and

there take into her mouth, throat, stomach and intestines, with the said milk, * * * certain sharp, jagged pieces of broken glass * * * taken from said bottles as aforesaid; and thereby * * *,'' the injuries set forth were suffered by the plaintiff to her damage, etc.

We are unable to agree with the contention of the plaintiff that this is a declaration in case for a breach of warranty. It is quite true that an action may be brought in case for a breach of warranty. *Greenwood v. John R. Thompson Co.*, 213 Ill. App. 371, and cases there cited. But such an action should contain appropriate allegations in the declaration, as was done in the declaration filed in the case cited, which alleged that the defendant was a restaurant keeper and that the deceased purchased certain food from it for immediate consumption. ''Whereby the said defendant warranted that the food so sold * * * was good and wholesome food and safe to be eaten, but the said defendant * * * then and there so carelessly, improperly and wrongfully * * * sold the said food * * * when it was not then and there good and wholesome food, but * * * was, in fact, unwholesome, poisonous, dangerous and unfit to be eaten, * * * that by reason thereof, the said deceased, * * * relying on said warranty of the defendant that the said food was then and there good, pure and wholesome food and fit to be eaten, did then and there eat and partake of the said food * * *,'' by reason whereof he was poisoned and died.

We find no such allegation in the declaration filed by the plaintiff in the case at bar nor any of similar import. The fact that the declaration alleges the contractual relation existing between the parties, cannot of itself make the case one for an alleged breach of warranty. The plaintiff might recover on the theory of an alleged breach of an implied warranty by the defendant, even if her declaration did not expressly

allege such a breach, provided she pleaded facts from which the law would imply a warranty and further facts which would constitute a breach of that warranty, even though she also alleged negligence on the part of the defendant. *Flessher v. Carstens Packing Co.*, 93 Wash. 48, 13 N. C. C. A. 173. But in order to recover under such a declaration she must have tried her case on the theory of implied warranty and that must be the issue which the jury passed upon. That was the situation in the case cited. In the case at bar, however, the plaintiff alleged, as the basis for her cause of action, the defendant's wrongful, careless and negligent conduct in causing or permitting the bottle in question to be broken and to contain pieces of broken glass, in failing to inspect the bottles and in filling said bottle with milk while it contained broken glass and in then delivering it to the plaintiff for her consumption without warning her of the danger of consuming it. And the plaintiff not only made these specific charges of negligence in her declaration, but followed that up in the trial of the case by presenting no issue for their determination other than that of the defendant's alleged negligence.

At the plaintiff's request the jury were instructed on that theory and no instructions were submitted by her, based on the theory of breach of warranty. Furthermore, at the request of the defendant and without any objection or exception being noted by the plaintiff, the court instructed the jury "that the defendant is not an insurer against fragments of glass being in the bottles of milk sold and delivered by it, but, on the contrary, the defendant's duty to its customers, including the plaintiff, is to exercise due and proper care in the handling, inspection and delivery of the milk and in the cleaning of the bottles before filling * * * and if you find from a preponderance of the evidence that the defendant exercised due and proper care in these respects, then it is not liable for the injury to the

plaintiff sued for  *  *  *.'' On the issue before the jury under the allegations of the plaintiff's declaration and the defendant's plea of the general issue, and the theory on which plaintiff had tried her case, that instruction was correct. Having brought her action and tried her case against the defendant on the theory of its alleged negligence, the plaintiff was obliged to prove the negligence alleged and may be allowed to recover on that theory, if at all. In *Sheffer v. Willoughby,* 163 Ill. 518, our Supreme Court so decided and by the reference made to that case by the same court in *Wiedeman v. Keller,* 171 Ill. 93, at page 99, it is apparent that the court did not wish to be understood as passing upon any question in the former case beyond the question of whether the charge of negligence brought by the plaintiff in that case was made out by the proof. *Crocker v. Baltimore Dairy Lunch Co.,* 214 Mass. 177, is to the same effect.

The crucial question, then, that remains, is whether the plaintiff sufficiently proved that the defendant was negligent. There is no testimony that any one saw the bits of broken glass put in the bottle. The evidence simply shows the way the defendant conducted its business, and that up to the time the bottle was delivered to the plaintiff it was under its sole control, save while it was in the sealed car, and that when the plaintiff undertook to drink the milk, there was present in the bottle bits of broken glass, which caused the injury. What does that evidence prove? Does it give rise in the mind, reasonably considered, to a satisfactory conclusion? The machinery used in the cleaning, filling and sealing of the bottle and turning out the cases ready for shipment may have been very wonderful and labor saving, but, of course, that is not enough, if the defendant failed in his duty by delivering to the plaintiff a bottle containing broken glass whereby she was injured. The verdict of the jury means that they

believed that the evidence showed the defendant was careless; that they believed that the evidence of the presence of broken glass in the bottle, under the circumstances, was sufficient to justify the conclusion that the defendant was guilty of negligence. Bearing their verdict and the evidence in mind, we may ask, how may it be said, within the bounds of reason, that any one was to blame but the defendant? It seems like playing with fanciful conjectures, to say that it might be attributed to some other agency and that the plaintiff has not reasonably made out a case. Absolute, positive, ocular proof, the law, wisely, does not require. Nor does negligence have to be proven beyond a reasonable doubt. Circumstantial evidence, such as exists here, and by which the mind is impelled to make certain deductions, is sufficient. Of course, we may be wrong, but as long as by the evidence we are persuaded that we are right, that must suffice. That the law requires, and only that. *Res ipsa loquitur* is ancient law. Acutely analyzed, it merely connotes a principle of evidence. It generally means the inferences we draw from knowledge we obtain through our senses, chiefly that of sight; in other words, common sense applied to physical things. The law is that not only what is spoken by the scene itself, the *res gestæ,* may be considered in conjunction with other evidence, but may, by itself make out a case. The books are full of cases illustrating its nature and application. *Chicago City Ry. Co. v. Barker,* 209 Ill. 321; Wigmore on Evidence, vol. 4, sec. 2509, notes 1 and 2; 29 Cyc. 592; *Scott v. London Docks Co.,* 3 H. & C. 596; *Drake Standard Mach. Works v. Brossman,* 135 Ill. App. 209. In most of the cases it will be observed the machine or apparatus, place or thing, that was the cause of the injury at the time, was under the exclusive control and management of the defendant. In the instant case, however, as the evidence shows that the cause of the injury was the voluntary

delivery by the defendant to the plaintiff of the instrument itself, and with the intention that its contents should be consumed, physical control and management at the time of the injury, that is, at the time the milk was being drunk, and with it the broken bits of glass taken in, was unimportant and immaterial. Further, the defendant did not receive the bottled milk as a finished product, already manufactured and ready for consumption. He, alone, was responsible for all that was done from the time the raw milk was delivered to him. No one else had the bottles. They were originally his and he alone filled them, and so could not blame any one for acts anterior to his own. We are of the opinion, therefore, that the evidence sufficiently shows that somewhere, and it is not important just where, between the cleaning and the final delivery of the bottle to the plaintiff, the defendant was guilty of negligence.

That most of the work done was accomplished by machinery, under inspection, and not by hand, makes no difference. The use of machinery may lend to increased output, and save hand labor, but it does not reduce the obligation of care nor condone negligence.

It is contended that the court erred in rejecting proof by one Sumner that he knew of the Milk Drivers' Union regulations, that under those regulations milk was to be delivered after 8:00 a. m. on the day in question, etc. All such testimony was too remote and properly rejected. He had no actual knowledge of the delivery of the milk. As to the evidence offered concerning the condition and inspection of the machinery, as we have already said, that is irrelevant.

It is contended that the trial judge gave an erroneous instruction for the plaintiff and erroneously refused certain instructions offered by the defendant.

Thirteen instructions were given for the plaintiff and ten for the defendant. The jury were quite elaborately instructed; and from a perusal of the instruc-

tions it is quite obvious they, on the whole, emphasized the law favorable to the defendant. Instruction No. 11 for the plaintiff, in view of defendant's instructions Nos. 9 and 11, was not erroneous. Although No. 11 may seem to assume that no proper inspection was made, yet Nos. 5 and 9 are so positive on that subject, there could be little if any danger of the jury being misled. Counsel for the defendant complain of refused instructions Nos. 1, 2 and 3, but do not point out the error of refusal.

Considering defendant's given instruction No. 9, it is obvious the refused instruction No. 1 was superfluous. Further, the first part of the instruction that the defendant did not warrant, etc., was inapt. Refused instruction No. 2, that defendant was not liable without knowledge that the broken glass was in the bottle, was unsound as it undertook to relieve the defendant of his full duty. Whether he knew or not is unimportant.

Refused instruction No. 3 pertains to control and management. The instruction misconceived the law. Control and management are not involved in the case. As we have already intimated, the instrument causing the injury was voluntarily delivered by the defendant to the plaintiff that its contents might be consumed. That established the relationship out of which the liability grew.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE THOMSON dissenting: In my opinion, the doctrine of *res ipsa loquitur,* invoked by the plaintiff in the case at bar, does not apply to the situation disclosed by the evidence. That doctrine will not be applied where the instrumentality causing the injury is not in the exclusive possession of the party charged and under his control at the time of the injury. 29 Cyc. 592; Wigmore on Evidence, vol. 4,

sec. 2509, p. 3556; *Hart v. Washington Park Club,* 157 Ill. 9; *Bjornson v. Saccone,* 88 Ill. App. 6. This was not the situation in the case at bar. The plaintiff testified that the defendant's driver left the bottle of milk in question on her back porch between 4 and 4:30 o'clock in the morning; that she brought it in and placed it on the kitchen table and left it there while she dressed, after which she prepared the breakfast; that she and her husband had breakfast in the kitchen; that they had breakfast food; that she poured the top of the bottle off into a pitcher for their coffee and then used some of the balance for the breakfast food; that "three or four inches" was left in the bottle; that after breakfast she read the morning paper and then cleared up the table, putting the dishes in the sink; that she took her coffee cup, rinsed it out but did not wipe it, poured some of the milk out of the bottle into the cup and drank it; that she felt something sharp in her throat and then picked up the bottle which still contained "one inch of milk," and held it up so she could look through the bottom and there she saw several bits of broken glass; that she had taken three or four swallows of milk from the coffee cup; that she took a drink of milk from the cup, set it down, cleared off some of the dishes, took another swallow, cleared off some more dishes, then took another swallow of milk and so on; that it was between 7:30 and 7:45 o'clock when she drank the milk containing the glass. The bottle was not chipped nor broken and showed no evidence of having been damaged. It is apparent that, for the reason heretofore given, the doctrine of *res ipsa loquitur* cannot apply to such a state of facts, especially where the thing which caused the injury consisted, not of anything which had been incorporated into or became a part of the milk itself, but of foreign particles which in some way had come to be in the milk. This bottle of milk not only was not in the exclusive possession of the defendant when the injury

complained of was received by the plaintiff but, on the contrary, it was in the exclusive possession of the plaintiff and had been, according to her testimony, for over three hours before the injury was received, during most or all of which time the bottle had been open on the kitchen table, breakfast had been prepared, the table set and the breakfast eaten and the dishes gathered and removed. Under such circumstances it cannot be said that this "is an unexplained accident which, according to the common experience of mankind, would not have happened, without fault on the part of the defendant," in which case, the doctrine of *res ipsa loquitur* might be invoked. *Ash v. Child's Dining Hall Co.*, 231 Mass. 86; *St. Louis v. Bay State St. Ry. Co.*, 216 Mass. 255.

This being an action involving solely the alleged negligence of the defendant, and not being one based on such facts as permit the application of the doctrine of *res ipsa loquitur,* in order to sustain the judgment recovered by the plaintiff, the negligence, or some one of the acts of negligence, alleged by her in her declaration must be established by the evidence in the record. In my opinion such is not the case. The plaintiff introduced no evidence whatever showing or tending to show negligence of the defendant as charged by her in her declaration and all the evidence on this subject, introduced by the defendant, tended strongly to show an absence of negligence on its part. The substance of the plaintiff's testimony has been referred to. All the other evidence introduced in her behalf was in corroboration of her testimony or had to do with the effect she suffered from swallowing the glass. Even if the jury did not believe the defendant's testimony as to the care it exercised in cleansing, filling and handling its bottles and straining and purifying the milk it delivered to its customers, that could not take the place of evidence of negligence. *Ash v. Child's Dining Hall Co.,* 231 Mass. 86. I have been able to find noth-

ing whatever in the record from which it can be inferred that the injury to the plaintiff resulted from any negligence on the part of the defendant, as charged by the plaintiff in her declaration. The carelessness of some person for whom the defendant was in no way responsible might have caused the presence of the glass in the milk at the time the plaintiff drank it. The plaintiff, having charged the negligence, has not introduced evidence beyond the mere fact of injury, which, of course, does not prove negligence.

I am further of the opinion that the trial court erred in rejecting the evidence of the witness Sumner. I am unable to see that the evidence was too remote and it seems to me to have been material on the question of the hour of the delivery of the milk by the defendant to the plaintiff. That matter was in sharp conflict and if the hour of the delivery, contended for by the defendant and testified to by its witness, was correct, the facts to which the plaintiff testified were impossible so far as they involved a bottle of milk delivered to the plaintiff by the defendant on the morning in question, and, therefore, I feel that the rejection of the evidence would warrant a reversal of the judgment and a remanding of the cause.

For the reasons which I have already stated, I am of the opinion that the trial court further committed reversible error in refusing to give to the jury the instruction designated as refused instruction 3.