ETTA MELLACE *vs.* JOHN P. SQUIRE COMPANY
(and eight companion cases[1]).

Suffolk.   December 6, 1939. — September 10, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Negligence*, In sale of food, Violation of law.   *Food.   Sale*, Of food.

A finding of negligence of a food dealer through violation of G. L. (Ter. Ed.) c. 94, § 150, or otherwise toward a person made ill by eating unwholesome chicken was not warranted by evidence merely that the chicken, bearing the dealer's label, was part of a box of undressed cold storage chickens sold by him to a retail dealer, who in turn sold it on the same day to such person.

NINE ACTIONS OF TORT.   Writs in the Superior Court dated March 4, 1936.

The actions were tried before *Walsh*, J.

*P. Mondello*, for the plaintiffs.

*C. W. O'Brien*, for the defendant.

DONAHUE, J.   These are nine actions of tort in which the plaintiffs seek to recover damages for personal injuries which they allege were received by them, owing to the negligence of the defendant, from eating unwholesome food which one of the plaintiffs had purchased from a retail dealer to whom the food had been sold by the defendant.

The cases were tried together in the Superior Court before a jury.   At the close of the evidence the judge directed a verdict for the defendant in each case and reported the cases to this court on a stipulation of the parties that, if the direction of verdicts for the defendant was right, judgment for the defendant should be entered in each case, and, if wrong, judgments should be entered for the plaintiffs in amounts stated.

[1] The eight other actions were brought against the same defendant by Frank Mellace, Vincent Attenasio, Mary Attenasio, Angelina Attenasio, Louis Attenasio, Adelaide Attenasio, Angela Mellace, and Anthony Mellace, respectively.

There was evidence that Etta Mellace, one of the plaintiffs, purchased two chickens from a retail dealer at about nine o'clock in the evening of December 24, that the chickens were placed in an "ice chest" in her home, that at ten o'clock in the morning of December 25 "she dressed, cut up and washed the chickens" and, as she did so, noticed "peculiar discoloration marks on the insides but thought nothing about it at the time." According to the testimony the nine plaintiffs (none of whom had eaten anything since five o'clock in the afternoon of the day before) at about two o'clock in the afternoon of December 25 sat down to dinner. All nine plaintiffs partook of the chicken and all nine became ill during the evening (see *Johnson* v. *Kanavos*, 296 Mass. 373, 375, and cases cited). Two young children who ate none of the chicken were not made sick. A physician testified that the sickness of the plaintiffs was "caused by food poisoning and might have [been] caused by eating the chickens" (see *Barringer* v. *Ocean Steamship Co. of Savannah*, 240 Mass. 405, 408; compare *Gracey* v. *Waldorf System, Inc.* 251 Mass. 76, 78). Two of the plaintiffs testified that they "noticed a peculiar taste while eating the chicken but neither said anything about it to the others" (see *Bergantino* v. *General Baking Co.* 298 Mass. 106, 108).

In order to recover, the plaintiffs were not obliged to exclude every other cause of their illness than the unwholesomeness of the chicken; it was enough if they showed that to be the probable cause. *Monahan* v. *Economy Grocery Stores Corp.* 282 Mass. 548, 550. There was evidence warranting such a finding.

The plaintiffs seek to recover on the ground of negligence of the defendant, not on the theory of a breach of warranty. The mere fact that the chickens were unwholesome when eaten would not justify a finding that the defendant was negligent. The doctrine of *res ipsa loquitur* does not here apply. *Blanchard* v. *Kronick*, 269 Mass. 464, 465.

The only evidence connecting the defendant with the chickens was that they "bore the defendant's label" and that the retail dealer who sold them to one of the plaintiffs had on the same day purchased them from the defendant

as part of a box of twelve undressed frozen or cold storage chickens. There was no evidence indicating where the defendant obtained the chickens or how long it had them, or under what conditions it kept them, or that there was any way by which, if they were unwholesome at the time they were sold to the retail dealer, such a condition could be ascertained. There was no evidence of any specific negligent act or omission on the part of the defendant with respect to the chickens it sold. *Crocker* v. *Baltimore Dairy Lunch Co.* 214 Mass. 177. *Ash* v. *Childs Dining Hall Co.* 231 Mass. 86. *O'Brien* v. *Louis K. Liggett Co.* 255 Mass. 553.

A finding was not here warranted that the defendant violated the penal statute G. L. (Ter. Ed.) c. 94, § 150. If there was such a violation of the statute it would be evidence of the defendant's negligence. *Schuler* v. *Union News Co.* 295 Mass. 350. The statute provides that: "Whoever . . . sells . . . for food . . . any tainted, diseased . . . decayed or unwholesome . . . meat . . . or provisions of any kind . . . without making the condition of the thing sold . . . fully known to the buyer" shall be punished by a fine or imprisonment or by both. It is an essential element of this statutory crime that the seller did not make known to the buyer the unwholesome condition of food sold. The burden was on the plaintiffs to prove this requirement of liability stated in the single sentence of the statute which describes the crime. *Commonwealth* v. *McKnight,* 283 Mass. 35, 40. *Sullivan* v. *Ward,* 304 Mass. 614, 615. The plaintiffs have not sustained this burden. All that appears with respect to the sale made by the defendant is that the chickens which were sold by it bore the defendant's label and that they were part of a box of a dozen frozen or cold storage chickens purchased from the defendant by the retail dealer. The record does not afford a basis for a finding that the defendant did not make known to the retailer the condition of the chickens sold. In *Schuler* v. *Union News Co. supra,* the facts relating to the transaction of sale between the defendant restaurant keeper and the plaintiff's intestate, which are set out in the record, war-

rant the inference that the seller in that case did not make known to the buyer the unwholesome condition of the food sold.

The trial judge was right in directing the jury to return a verdict in each case for the defendant and, in accordance with the stipulation of the parties, judgments must be entered for the defendant.

*So ordered.*